UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MASADA MURICE KING,

    Petitioner,                                      CASE No. 07-12011

v.                                                    HON. AVERN COHN

MARY BERGHUIS,

    Respondent.

_____/

## MEMORANDUM AND ORDER
## DENYING THE PETITION FOR WRIT OF HABEAS CORPUS
## AND
## DENYING A CERTIFICATE OF APPEALABILITY

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Masada Murice King, ("petitioner"), is a state inmate who is currently confined at the Brooks Correctional Facility in Muskegon Heights, Michigan, where he is serving a sentence of life imprisonment without parole for first-degree felony murder, Mich. Comp. Laws § 750.316; fifteen to thirty years for assault with intent to rob while armed, Mich. Comp. Laws § 750.89; fifteen to thirty years for carjacking, Mich. Comp. Laws § 750.529a; two to five years for felon in possession of a firearm, Mich. Comp. Laws § 750.224f; and two consecutive years for possession of a firearm in the commission of a felony, Mich. Comp. Laws § 750.227b. Petitioner has filed a *pro se* petition for writ of habeas corpus claiming that he is incarcerated in violation of his constitutional rights. Respondent, through the Attorney General's Office, filed a response, arguing that petitioner's claims lack merit or are procedurally defaulted. For the reasons which follow, the petition will

be denied.

## II. Procedural History

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court.

Petitioner filed an appeal of right to the Michigan Court of Appeals, in which he raises the four claims presented in the petition. The Michigan Court of Appeals affirmed his conviction on appeal. *People v. King*, No. 257980 (Mich.Ct.App. February 14, 2006). Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims, The Michigan Supreme Court denied petitioner leave to appeal. *People v. King,* 477 Mich. 866 (2006).

Petitioner now seeks habeas relief on the following grounds:

I. The trial court did violate Mr. King's due process right to a fair trial by erroneously instructing the jury that it could disbelieve Mr. King based on his prior unnamed criminal convictions – convictions that were inadmissible for impeachment purposes.

II. The prosecutor did commit reversible misconduct by improper [sic] denigrating Mr. King based on race and religion, thereby violating Mr. King's due process right to a fair trial.

III. Mr. King was deprived of his state and federal constitutional right to a 12-person jury and to an unbiased jury when the trial court replaced a seated juror with a former juror who had been unequivocally dismissed from service without ensuring that the replacement juror was free from outside influence.

IV. Mr. King was denied his Sixth Amendment right to the effective assistance of counsel at trial.

## III. Facts

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. §

2

2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> On August 4, 2003, at about 11:00 p.m., the decedent, Curtis Foster, picked up his girlfriend, Kisha Walker, at her home. Foster drove a few blocks away and parked the car. Walker and Foster noticed defendant and another male walk down the street and approach the car. Defendant pointed a gun in the driver's side window. Defendant ordered Foster out of the car, grabbed him as he was getting out, and shook him down for money, but Foster did not have any. The other male with defendant went to the passenger door, ordered Walker out of the car, and took her money. Walker felt the car shake, saw Foster run away, and saw defendant fire five or six shots at Foster. Walker was told to run, and she did. She ran in the same direction as Foster, who stopped running a few blocks from her house. He had been shot once in the back. As Walker ran, she heard the car door slam and the car start up. Walker ran home and told her father and brother that defendant shot Foster. Walker then crossed the street to a neighbor's home and called the police, who arrived immediately. Foster died as a result of the gunshot wound. Foster's car was found a short distance from where the shooting occurred.

*King,* Slip. Op. at * 1.

### IV. Analysis

#### A. Standard of Review

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court

3

has on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

### B. Procedural Default

Respondent contends that petitioner's first, second, and third claims are procedurally defaulted because petitioner failed to preserve these errors by objecting at trial and the Michigan Court of Appeals rejected petitioner's claims on this basis.

In his fourth claim, petitioner claims that his trial counsel was ineffective for failing to object to these errors. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687. Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would be easier to consider the merits of these claims. *See*

4

*Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004). The Court will also discuss each of petitioner's ineffective assistance of counsel claims together with the underlying claim.

### C. Claim # 1 - Jury instruction

Petitioner first contends that the trial court erroneously instructed the jury that it could disbelieve petitioner based upon prior unnamed criminal convictions that were irrelevant and inadmissible for impeachment purposes.

Petitioner was charged with felon in possession of a firearm. The parties stipulated that petitioner had "a prior felony conviction of a specified nature." The trial court instructed the jury that it could consider petitioner's past conviction "only in deciding whether the defendant is a truthful witness." The trial court further instructed the jurors that they could not use petitioner's prior convictions for any other purpose, particularly as evidence that petitioner committed the crime that he was charged with. Petitioner's prior convictions were for possession of a controlled substance, but the jury was never told the nature of these convictions.

Petitioner contends that these convictions would have been inadmissible under Michigan law to impeach his credibility, because they did not involve a crime of false statement, or theft. Under Michigan law, "prior convictions for nontheft crimes which do not contain elements of dishonesty or false statement should never be admitted into evidence" for impeachment purposes. *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 608 (E.D. Mich. 2001)(*quoting People v. Allen*, 429 Mich. 558, 596; 420 N.W. 2d 499 (1988)).

A federal court in a habeas corpus proceeding must do more than find a jury

instruction in a state criminal trial was erroneous to grant habeas relief. *See Smith v. Anderson,* 505 F. Supp. 642, 644 (E.D. Mich. 1980). The question on habeas review of jury instructions is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten,* 414 U.S. 141,147 (1973). "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle v. McGuire,* 502 U.S. 62, 72 (1991)(*quoting Naughten,* 414 U.S. at 147).

Here, petitioner has failed to show that the trial court's instruction deprived him of a fair trial. Even though the instruction informed the jury that they could use petitioner's prior unnamed nontheft convictions to determine petitioner's credibility, the instruction also informed the jury that his prior convictions could not be used as substantive evidence to determine petitioner's guilt to his charged offenses. *See Johnson v. Renico,* 314 F. Supp. 2d 700, 711 (E.D. Mich. 2004). Secondly, the trial court's erroneous instruction that the jury could consider petitioner's unnamed nontheft convictions to determine his credibility was harmless error, because petitioner's credibility was already called into question by some of the evidence at trial. *Id.* As the Michigan Court of Appeals noted in rejecting petitioner's related ineffective assistance of counsel claim:

> There was strong evidence introduced at trial that defendant committed the crimes including evidence that defendant was found at his alleged accomplice's residence with the murder weapon in a nearby box. We also point out that defendant presented an alibi witness, his girlfriend, Cynthia McMillan. The jury's verdict necessarily means that it rejected McMillan's testimony.

6

*King,* Slip. Op. at * 7.

The Court also notes that Ms. Walker immediately identified petitioner as the shooter to her brother and father right after the shooting had taken place. In light of the evidence in this case, the trial court's instruction that the jury could consider petitioner's prior nontheft convictions to determine his credibility did not deprive him of a fair trial. Further, because petitioner cannot affirmatively demonstrate that but for his counsel's error in failing to object to the improper impeachment instruction, the outcome of the case would have been different, petitioner is not entitled to a writ of habeas corpus on his related claim that counsel was ineffective for failing to object to the giving of this instruction. *See Johnson,* 314 F. Supp. 2d at 711.

### D. Claim # 2 - Prosecutorial Misconduct

Petitioner next contends that the prosecutor improperly denigrated petitioner based on his race and religion, when he made the following comments during rebuttal argument:

> Lastly, in closing, I submit to you that Mr. King is well named. Masada is a fortress near the Dead Sea. In the first century, the Jews were revolting against the Romans. And Masada is a location [to] which they fled in the year 70 of the first century.
>
> They had been slaughtered in Jerusalem, so they fled. There was a number of zealots that escaped and housed in Masada, this fortress. They held ou[t] for three days. Three years, excuse me. Three years they watched the Romans below as they built their catapults, as they built their battering rams and ladders to get to the fortress until there came a time when they saw the handwriting on the wall and they decide to escape one last time. And that is nine hundred and sixty Jews committed suicide.
>
> It's just dubious history, the name Masada. But it's symbolic of somebody trying to escape, somebody trying to pull the wool over your eyes. Somebody who will do anything to avoid facing the consequences. That's Masada King.

7

>Don't let him get away with it. Find him guilty of first degree murder. Thank you.

*King,* Slip. Op. at * 2-3.

To prevail on a claim of prosecutorial misconduct, a petitioner must show that the alleged misconduct infected his trial with such unfairness as to make the resulting conviction a denial of due process. *Byrd v. Collins*, 209 F. 3d 486, 529 (6th Cir. 2000) (*quoting Darden v. Wainwright*, 477 U.S. 168, 181 (1986))(*quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Courts must keep in mind that "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "Therefore, even if the prosecutor's conduct was 'undesirable or even universally condemned,' *Darden*, 477 U.S. at 181 (quotation marks and citations omitted), it does not constitute a due process violation unless the conduct was 'so egregious so as to render the entire trial fundamentally unfair.'" *Byrd*, 209 F. 3d at 529 (end citations omitted). In addition, because this case is a habeas case and is not a direct appeal, the inquiry into an issue of prosecutorial misconduct is less stringent. *See Spalla v. Foltz*, 615 F. Supp. 224, 227 (E.D. Mich. 1985). Furthermore, prosecutorial misconduct falls into the category of trial, rather than structural, errors and may be reviewed for harmless error. *Maurino v. Johnson*, 210 F.3d 638, 647 (6th Cir. 2000), *abrogated on other grounds by Harris v. Stovall*, 212 F. 3d 940, 942-43 (6th Cir. 2000). A habeas petitioner is not entitled to relief where a state court's rejection of his prosecutorial misconduct claim is not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. *See Mahaday v. Cason,* 367 F. Supp. 2d

1107, 1120 (E.D. Mich. 2005).

In rejecting petitioner's prosecutorial misconduct claim, the Michigan Court of Appeals ruled that although the prosecutor's comments were "ill-advised and unfortunate," there was no indication "that the prosecutor was intentionally trying to arouse ethnic prejudices." *King,* Slip. Op. at * 3. The Michigan Court of Appeals further held that it was unlikely that the prosecutor's comments moved the jury to convict petitioner in light of the weight of the evidence against him. *Id.*

The Court agrees with the Michigan Court of Appeals. The prosecutor's inflammatory references to petitioner's Biblical name, while improper, do not entitle petitioner to habeas relief. The prosecutor's comments were isolated, there is no indication that they misled the jury, and the prosecutor made no other reference to religion in his closing argument. *See U.S. v. Roach,* 502 F. 3d 425, 435-36 (6th Cir. 2007)((in prosecution of two police officers for depriving two Hispanic victims of their civil rights under color of law by stealing money from them during a traffic stop, prosecutor's closing argument comment that the Commandment, "thou shalt not steal" did not say thou shalt not steal from people you know, or from citizens, or from white people, while improper, was not flagrant, prosecutor's comment was isolated and there was no indication that it misled the jury, and government made no other reference to religion); *Hicks v. Collins,* 384 F. 3d 204, 223 (6th Cir. 2004)(prosecutor's ambiguous reference to "fate, God, a deity or something" as source of responsibility for death sentence, to extent it may have improperly interjected religion, was harmless, isolated statement). Moreover, in light of the substantial evidence in this case, the prosecutor's brief references to religion during his closing argument did not have a substantial and

9

injurious effect or influence in determining the jury's verdict and, thus, do not entitle petitioner to habeas relief. *See McCary v. Lewis,* 255 Fed.Appx. 78, 79-80 (6th Cir. 2007).

Because the prosecutor's conduct was either not improper or harmless error, counsel's failure to object to the prosecutor's argument was not ineffective assistance of counsel. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 866 (E.D. Mich. 2003).

### E. Claim # 3 - Alternate Juror

Petitioner next claims that the trial court violated his constitutional right to be tried by a jury of twelve qualified and sworn jurors, as well as an impartial jury, when it replaced a seated juror with a previously dismissed juror, without ensuring that she was free from outside influence. At trial, after the jury was instructed, but before deliberations began, lots were drawn to determine which of the thirteen jurors would be excused. The trial court stated, "If your name is called, go into the jury room and retrieve whatever personal items you have and then have a seat right over by the TV." The trial court then "thank[ed] and excuse[d] the juror seated in seat number thirteen, Deborah Montegano."

On the second day of deliberations, the trial court received two notes. One note informed the judge that the jury was deadlocked and the other stated that one of the jurors was ill. The courthouse was subsequently evacuated due to smoke in the building. When the building was reopened, the judge was informed that the ill juror was in the hospital and could not continue deliberations. The judge excused the ill juror with both parties' consent. The parties agreed that the alternate juror, Ms. Montegano, would be recalled the following day and deliberations would begin anew. Montegano

10

appeared in court the next day and the trial court instructed the jury to choose a foreperson again and begin deliberations anew. Both parties expressed satisfaction with the trial court's statement.

In rejecting petitioner's claim on appeal, the Michigan Court of Appeals acknowledged that the trial court failed to give Montegano the mandatory instruction under M.C.R. 6.411 "not to discuss the case with any other person[.]" The Michigan Court of Appeals concluded that this amounted to plain error. *King,* Slip. Op. at * 5. However, the Michigan Court of Appeals concluded that petitioner was not entitled to reversal of his conviction, because he failed to show that he was prejudiced:

> After reviewing pertinent case law, we believe that defendant must make an affirmative showing of prejudice in order to demonstrate the trial court's plain error in violating MCR 6.411 affected his substantial rights. The record displays that the trial court had clearly dismissed Montegano, but at the same time retained her as an alternate member of the jury in case her services were needed. Thus, Montegano's dismissal did not render her an unsworn member of the community with no continuing duty to the court and it was incumbent on defendant to present evidence of prejudice. Defendant presented no evidence of prejudice. Thus, without something more, the mere fact that the trial court dismissed Montegano did not automatically render her unable to continue to serve on the jury and defendant is not entitled to reversal.

*King,* Slip. Op. at * 5.

The Michigan Court of Appeals further concluded that petitioner's right to an impartial jury was not violated. In so ruling, the court of appeals noted that M.C.R. 6.411 does not require that an alternate juror be questioned by the court when recalled, and although M.C.R. 6.414(A) directs a trial court to "take appropriate steps" to ensure that jurors are able to render an impartial verdict, "it does not explicitly explain what 'steps' the trial court is required to fulfill." *King,* Slip. Op. at * 5. The Michigan Court of

11

Appeals went on to reject petitioner's claim, because petitioner had failed to offer any affirmative evidence to show that the alternate juror was in any way partial or that she had been exposed to extrinsic influences before the trial court recalled her. *Id.* at * 6-7.

M.C.R. 6.411 states in pertinent part:

> The court may retain the alternate jurors during deliberations. If the court does so, it shall instruct the alternate jurors not to discuss the case with any other person until the jury completes its deliberations and is discharged. If an alternate juror replaces a juror after the jury retires to consider its verdict, the court shall instruct the jury to begin its deliberations anew.

M.C.R. 6.411 is similar to Fed. R. Crim P. 24(c)(3).

The Court notes that neither M.C.R. 6.411 nor Fed. R. Crim. P. 24(c)(3) are constitutionally mandated. *See U.S. v. Ross,* 323 Fed. Appx. 773, 775 (11th Cir. 2009); *People v. Dry Land Marina*, 175 Mich.App. 322, 328-29; 437 N.W. 2d 391 (1989)(involving M.C.R. 6.411's predecessor rule). To the extent that the trial court violated M.C.R. 6.411 in replacing the juror, petitioner would not be entitled to habeas relief on his claim. *See e.g. Claudio v. Snyder*, 68 F. 3d 1573, 1575 (3rd Cir. 1995). Moreover, "[T]he Supreme Court has not specifically ruled on the constitutionality of substituting an alternate juror after jury deliberations have begun." *Id.* Most federal courts that have addressed the issue have held that the "substitution of an alternate juror in place of a regular juror after deliberations have begun does not violate the Constitution, so long as the judge instructs the reconstituted jury to begin its deliberations anew and the defendant is not prejudiced by the substitution." *Id.* (collecting cases). A habeas petitioner must demonstrate that he was prejudiced by the replacement of a seated juror with an alternate to prevail on his or her claim. *See Hughes v. Phillips,* 457 F. Supp. 2d 343, 368 (S.D.N.Y. 2006).

Petitioner is not entitled to habeas relief on his claim because there is no clearly established Supreme Court law which requires a trial court judge to advise an alternate juror not to discuss the case with anyone or to question that alternate juror when recalled to replace a seated juror. *See Tate v. Bock,* 271 Fed. Appx. 520, 523 (6th Cir. 2008)(state trial court's failure to instruct the jury to begin deliberating anew after the recall of a discharged alternate juror was not contrary to clearly established Federal law, as required for federal habeas relief).

In addition, petitioner is not entitled to habeas relief on his claim because he has presented no evidence to this Court that the alternate juror was actually biased or had been subjected to extrinsic influences. In *Remmer v. United States*, 347 U.S. 227, 230 (1954), the Supreme Court held that a trial court confronted with an allegation of external tampering or contact with a juror during a trial about a matter pending before the jury "should determine the circumstances, the impact [of the contact] upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate". However, a *Remmer* hearing is not required unless the defendant can show that the unauthorized juror contact "created actual juror bias." *United States v. Frost*, 125 F. 3d 346, 377 (6th Cir. 1997).

Here, the trial court's failure to question the alternate juror about any conversations that she may have had between the time of her discharge and her recall would not entitle petitioner to relief, because petitioner's contention that the alternate juror was biased and subjected to extrinsic influences during the period between her release and return to court is based on nothing but speculation. See *U.S. v. Davis,* 15 F. 3d 1393, 1410-11 (7th Cir. 1994). Moreover, the jurors were admonished at the

13

beginning of trial not to "discuss this case with anyone, even your family or friends." (Tr. 5/17/2004, p. 239). The trial court further advised the jurors that they should only discuss the case among themselves and only when they were in the jury room. The judge advised the jurors that they could discuss the case with anyone after the trial was over. (*Id.* at p. 240). Although the trial court did not instruct Montegano to refrain from discussing the case, he plainly sent the same message when he instructed all of the jurors at the beginning of trial that they should not discuss the case with anyone outside of the courtroom and should only discuss the matter when they were together with the other jurors in the jury room. By giving these instructions, the trial court plainly sent a message to Ms. Montegano not to discuss the case with anyone outside of court until the case had concluded. *Davis,* 15 F. 3d at 1410. Because petitioner has failed to show that the alternate juror discussed the case with anyone or was subjected to extraneous or extrinsic influences, he is not entitled to habeas relief on his claim.

### F. Claim # 4- Ineffective Assistance of Counsel

As noted above, because petitioner's claims lack merit, it cannot be said that counsel was ineffective for failing to object at trial. When defense counsel focuses on some issues to the exclusion of others, there is a strong presumption that he or she did so for tactical reasons, rather than through sheer neglect, and this presumption has particular force where an ineffective assistance of counsel claim is asserted by a federal habeas petitioner based solely on the trial record, where a reviewing court "may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive." *See Yarborough v. Gentry,* 540 U.S. 1, 5-6 (2003)(*quoting Massaro v. United States*, 538 U.S. 500, 505 (2003)). A defense

14

counsel's decision, for strategic reasons, to permit replacement of a juror with an alternate is not ineffective assistance. *See Watkins v. Kassulke,* 90 F. 3d 138, 143 (6th Cir. 1996).

Here, petitioner did not move for a *Ginther* [1] hearing on his ineffective assistance of counsel claims, thus, the Michigan Court of Appeals limited their review of petitioner's ineffective assistance of counsel claims to mistakes which were apparent from the record. *King,* Slip. Op. at * 7. By failing to present any evidence to the state courts in support of his claim, he is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this Court. *See Cooey v. Coyle*, 289 F. 3d 882, 893 (6th Cir. 2002)(citing 28 U.S.C. § 2254(e)(2)(A)(ii)). Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim, because he has failed to rebut the presumption that defense counsel had strategic reasons for permitting the replacement of the seated juror with the alternate juror after deliberations had commenced.

## V. Conclusion

For the reasons stated above, the state courts' rejection of petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. Accordingly, the petition for a writ of habeas corpus is **DENIED.**

Furthermore, reasonable jurists would not debate the Court's assessment of

---

[1] *See People v. Ginther,* 390 Mich. 436, 443; 212 N.W. 2d 922 (1973).

Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. The Court therefore **DENIES** a certificate of appealability under 28 U.S.C. § 2253(c)(2). [2] *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, if petitioner chooses to appeal the Court's decision, he may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

**SO ORDERED.**

Dated: September 8, 2010         S/Avern Cohn
                                 AVERN COHN
                                 UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to Masada King 353216, Earnest C. Brooks Correctional Facility, 2500 S. Sheridan Drive, Muskegon, MI 49444 and to the attorneys of record on this date, September 8, 2010, by electronic and/or ordinary mail.

                                 S/Shawntel Jackson
                                 Relief Case Manager, (313) 234-5160

---

[2] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.